CMC v. Executive Risk                    CV-03-35-B      05/04/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Catholic Medical Center, et. al.**

    **v.**                                    Civil No. 03-35-B
                                         Opinion No. 2004 DNH 077
**Executive Risk Indemnity, Inc.**



### ORDER OF CERTIFICATION

Catholic Medical Center ("CMC") and other plaintiffs have brought a declaratory judgment action against their former insurer, Executive Risk Indemnity, Inc. ("Executive Risk"), seeking coverage under a "claims-made" liability insurance policy. The policy in question contains a provision that permits an insured to obtain coverage for a claim that is made after the policy expires if the insured gives the insurer written notice of the potential claim while the policy is in effect. Relying on this provision, CMC sent notices of seven potential claims via Federal Express to Executive Risk's agent on the last day that the policy was in effect. The notices were not received by Executive Risk until the next day, approximately nine hours after

the policy had lapsed.  The primary issue that this case presents is whether Executive Risk properly refused to cover the potential claims because it did not receive notices describing the acts giving rise to the claims while the policy was in effect. Because this issue turns on two important and unresolved questions of New Hampshire law, I certify both questions to the New Hampshire Supreme Court.

## I.  BACKGROUND

CMC purchased a claims-made liability policy from Executive Risk that covered CMC and its affiliated organizations and physicians.  The policy was effective from 12:01 a.m. August 1, 2001 to 12:01 a.m. August 1, 2002.  As a claims-made policy, the Executive Risk policy covers claims brought against the insured during the policy period.  The policy also obligates Executive Risk to cover claims that are made after the policy expires if CMC gives Executive Risk written notice of the potential claims while the policy is in effect.  The relevant policy provision states:

> (2)  If during the Policy Period the Insured first becomes aware of any Wrongful Act or Occurrence that may subsequently give rise to a Claim under INSURING AGREEMENTS (A) or (C) and:

> (a) gives the Underwriter written notice of such Wrongful Act or Occurrence with full particulars as soon as practicable thereafter but in any event before the Expiration Date or earlier cancellation date of this Policy; and
>
> (b) requests coverage under INSURING AGREEMENTS (A) or (C) of this Policy for any Claim subsequently arising from such Wrongful Act or Occurrence which is reported as soon as practicable after such Claim is made;
>
> then any Claim . . . arising out of such Wrongful Act or Occurrence shall be treated as if it had been first made during the Policy Period.

(Pls.' Mem. Supp. Summ. J. Ex. 2, App. 30).

On the afternoon of July 31, 2002, CMC's risk manager, Kathleen Mackinnon, sent seven notices of potential claims via Federal Express Priority Overnight to Chubb & Son, claims manager for Executive Risk. Federal Express delivered the notices as expected at 9:03 a.m. on August 1, 2002, approximately nine hours after the policy had expired. On August 16, 2002, Barbara Tyrrell, on behalf of Executive Risk, denied coverage of all seven potential claims because notices were received after the expiration of the policy. Two of the potential claims have since matured into actual claims. CMC reported the first[1] of these

---

[1] In May 2003, patient John Donahue sued CMC, Catholic Medical Center Physicians Practice Association, Inc. ("CMCPPA"), and Drs. Charles F. Carrier and Miguel Juardo. CMCPPA and the doctors were later added as plaintiffs in the instant litigation.

claims to Executive Risk but was denied coverage on the grounds of late notice.[2]

## II.  CERTIFIED QUESTIONS

The parties have filed cross-motions for summary judgment addressing the notice issue.  Plaintiffs contend that the notices were timely because CMC sent them via Federal Express while the policies were in effect.  Alternatively, they argue that they are entitled to coverage even if the notices were untimely because CMC substantially complied with the notice requirement and Executive Risk did not suffer prejudice as a result of the late notice.  Executive Risk argues that the notices were late because its agent did not receive them until after the policy had expired.  It also contends that New Hampshire law does not excuse a failure to comply with a notice requirement in a claims-made policy regardless of whether the insured substantially complied with the requirement or the late notice adversely affected the

_____

[2] ProSelect, the carrier that replaced Executive Risk, has also denied coverage for all seven potential claims citing the understanding of the parties that coverage would not exist for potential claims known to CMC before the coverage commenced and because notice of these potential claims had been reported to another carrier.

-4-

insurer. These arguments present unresolved questions of New Hampshire law that are likely to recur unless they are authoritatively resolved by the New Hampshire Supreme Court. Thus, I certify the following questions of law pursuant to N.H. Supreme Court Rule 34:

(1) Does an insured comply with a provision in a claims-made liability insurance policy requiring the insured to give written notice of acts that may result in future claims before the policy expires if the insured sends written notice via Federal Express while the policy is in effect but the notice is not received until after the policy expires?

(2) If the answer to question 1 is no, is the insured nevertheless entitled to coverage if the insured substantially complies with the notice requirement and the insurer does not suffer prejudice as a result of the late notice?

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 4, 2004

cc:  Jonathan Constine, Esq.
     Patrick Donovan, Esq.
     Mark Mallory, Esq.